The next case this morning is 524-03-78, People v. Adams. Arguing for the appellant is Sarah Free. Arguing for the appellee is Hiram Finjack. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings today. Morning, counsel. Good morning, your honor. As you can see, Justice Barbaras is not present. He will be listening to a recording of the oral argument and will be participating in the ultimate disposition. Thank you, your honor. With that, appellant, if you are ready to proceed, you may do so. Yes, your honor. Good morning, and may it please the court. My name is Sarah Free of the Office of the State Appellate Defender, counsel for the defendant appellant, Clay Adams. Your honors, this case involves a common situation where a couple lives separate lives under the same roof. There are two issues that this court should resolve. First, whether the defense of dwelling applies to a separate, locked, private personal space in that shared residence. And second, whether the defense of property applies where Clay Adams reasonably believed that he needed to use force in order to defend his property. This court should reject the state's claim that one spouse has unfettered rights to another spouse's and property simply by virtue of the fact they are married and live in a shared residence. We respectfully request that this court reverse Clay's case and remand for a new trial. Now, your honors, beginning with the defense of dwelling argument, counsel's decision to not argue for or instruct the jury on defense of dwelling when these, when the facts of the case fit these defenses, was objectively unreasonable and prejudiced Clay, where he reasonably believed that he needed to use force in order to terminate his wife, wife, Catherine's unlawful entry into his dwelling. Now, Clay's personal living space, this office in the front of the home, qualified as a dwelling, and the statute, the provision of the Illinois Criminal Code that defines dwelling, is really the cornerstone of this analysis. But this definition can be built upon by asking two other questions that courts have turned to. First, how is this room used? And second, who was allowed to use this room? Testimony and evidence at trial showed that Clay and Catherine were, quote, living separate lives in the same house for years. Catherine testified at trial that she had described it to a friend as being roommates. And like the bedroom that was at issue in State v. Perez-Salas, which was the Oregon Appellate Court case, Clay's room had secure physical access. He testified that he would lock, the office, from the inside of the space with a bicycle lock. It had a separate function and separate occupation. Clay testified that- Let me interrupt you for just a moment. At some point during the trial, I believe, or during the evidence, it was presented that he actually went into her room, the room that she primarily resided in, correct, or occupied. Yes, sir. Okay, so it could be assumed that he freely walked throughout the house, so wouldn't the assumption work for her as well, that she freely walked throughout the house? So, Your Honor, in this case, Clay's fluid use of other spaces throughout the house doesn't have bearing on the legal question of whether his front office space qualified as a dwelling for purposes of the defense of dwelling. Now, courts have typically looked at factors such as the nature and the function of the room, as well as an expectation of privacy and exclusivity. As testimony showed at trial, Clay would occasionally sleep in this other master bedroom, but there was no evidence or indication that anyone else had the expectation that they could use his front dwelling space as their own. And so, ultimately, this legal question turns on the nature of his specific space rather than Catherine's master bedroom space. But doesn't it also turn on her perception of what her space was as well? I mean, if she's living in the house, her perception of the fact of whether that's her space, and if she can walk in there just like he can walk in her bedroom, doesn't it turn on that, practically speaking? Sure, Your Honor. Here, looking at, you know, this question of whether someone had permission to enter his living space, his testimony at trial indicated that she barged through doors that he was attempting to lock, and this barging through the doors indicates that she, in fact, did not have permission to be in the space. Evidence at trial further showed that he was pleading with her repeatedly to please leave my room, and evidence at trial also showed that both Catherine and Clay used possessive terms such as his room and my room to refer to this front office space to indicate that this was, in fact, a separate living area. At one point, Catherine testified both that he was living in the front office space and that he stayed there, indicating that this front space, for purposes of this defense, was his dwelling. Now, at trial, my understanding is that there was no claim that she claimed that the master bedroom was her exclusive living space, but for purposes of whether or not counsel should have argued this defense, the facts at trial show that, in fact, this front office space was Clay's separate dwelling. If Your Honors have no other questions, I'll go ahead and move on to the rest of my time. Oh, any further questions, Justice Schiller? Not at this time. Thank you, Your Honor. So, moving on to this question of the expectation of privacy and exclusivity, I'd like to just end on the note that, similar to the bedroom in People v. Mesco, which was the New York State Appellate Court case, where the court emphasized the room's exclusivity, here, as noted, Catherine did not have permission to be in this space. And the state's argument that Clay's fluid use of space throughout the home doesn't mean that his room itself was not a separate dwelling for purposes of this defense. And ultimately, counsel's to not argue this defense was objectively unreasonable when the facts fit the defense in a prejudiced claim. I do have a question, counsel. I believe your case law is outside of Illinois, is that correct? Correct. You have nothing directly on point here in Illinois, correct? That's correct, Your Honor. All right, thank you. You're welcome. Your Honors, moving on to the second issue here, for ineffective assistance of counsel, this defense of property argument. Here, again, we have a situation where counsel's decision to not argue for or instruct the jury on a defense that fit the facts much better than self-defense was objectively unreasonable and prejudiced Clay. I'd like to start here by clarifying that, under Illinois law, contrary to what the state argued in its brief, in order to instruct a jury on this defense of property, the property does not need to belong exclusively to a person. It doesn't need to have exclusive ownership. It merely needs to be in that person's lawful possession. And here, Clay was in lawful possession of these televisions. And evidence at trial showed that the core of this disagreement was over property. It was over televisions. The state cites an Illinois case, People versus Graybow, in its brief, whose analytical framework I actually think is quite helpful in determining whether or not Clay was, in fact, entitled to this Now, while the holding in Graybow was the opposite of what we're asking for in this case, because the court in Graybow found that the defendant was not, in fact, entitled to a defense of property instruction, the court used a four-factor test that can be applied to this case to demonstrate that Clay was entitled to this instruction. In that case, the court analyzed whether the complaining witness's permission to use the property had been terminated. Here, in this case, Catherine never had permission to take his television, whereas the complaining witness in Graybow initially had permission to use the cell phone. Second, the court in Graybow looked at whether the property was in immediate danger of unlawful trespass. In this case, every time Clay and Catherine were physically confronting one another, she was attempting to take the television away from him or away from his space, whereas the complaining witness in Graybow never moved, was standing in the same spot with the property. For the third factor in Graybow, the court analyzed whether the defendant's actions were, in fact, motivated by concern about this unlawful trespass. And here, Clay's physical interactions with Catherine were always and only to get the TV back into his possession. The defendant in Graybow was motivated by over-caring the complaining witness. In that case, call him evil over the phone, after which he in the face. And that's distinguishable from this case, because Clay's actions were motivated by getting his property back. Lastly, Your Honors, in Graybow, the court analyzed whether the force used was excessive. And in Graybow, the court noted that the complaining witness was struck so hard by the defendant that her glasses flew off her face, she dropped the phone, she began crying, and the court noted that she also became afraid of the defendant. In this case here, there were no lasting injuries. And after every physical confrontation, Catherine continued to reinitiate attempts to take the TV away from Clay. Ultimately, Your Honors, it was undisputed that Catherine went into Clay's room for the sole purpose of taking away his TV. Testimony at trial showed that she went in there in order to mess with his stuff to take his TV. And Your Honors, the defense of property provides us a legal structure that says sometimes people have these disagreements over property, and a person can legally use force to defend that property and attempt to recapture that property. Here, Clay was deprived of his ability to even ask the jury if his use of force was in fact justified. And Your Honors, I'll end on the note that there was not a strategic reason for counsel to not argue this or not ask for this instruction. In the state's brief, the state argues, and I'm summarizing here, but the counsel may not have chosen this defense because it would paint my client in a bad light. And Your Honors, every fact that could have and did paint my client in a bad light had already been submitted to the jury for their consideration. What the jury was lacking here was a legal structure where they could justify these bad facts, these use of force. Ultimately, Clay was entitled to both of these instructions on defensive property and defensive dwelling. And for all the foregoing reasons, we respectfully request that this court reverse Clay's case and remand for a new trial. Thank you. Justice Schiller, any further questions? Not at this time. All right. Thank you, counsel. You'll be given time for rebuttal. Apolli, you may proceed. Good morning, Your Honors. This is Hiram Fenjack representing the state in this matter. Turning to the defendant's first contention, he has failed to demonstrate that counsel was ineffective for not raising the affirmative defense of defensive dwelling. The defendant argues his office constituted a separate dwelling because it was locked exclusively used by him and separate from the rest of the home. This argument fails both legally and factually. The office remained part of the shared marital residence, not a separate dwelling. The evidence doesn't support exclusive use of the office on the part of the defendant. The defendant's own testimony demonstrated, as was mentioned in the previous counsel's argument, the defendant's own testimony demonstrated that he moved freely between the office and the master bedroom based on whether his wife was in the home, which demonstrates shared conditional uses of the spaces within the home, not separate dwellings. The cases the defendant has cited are distinguishable. For example, in Perez-Salas, the court emphasized that the siblings lived in the house independently and coexisted in the house, but there is no evidence that the two shared a home akin to a family residence. Here, the defendant and Catherine were married spouses sharing a family residence. Simply locking a door doesn't create a separate dwelling. Catherine had also locked the master bedroom door, yet the defendant freely entered by manipulating the lock. If locking doors created separate dwellings, then every locked room in a house would constitute a separate dwelling. Most importantly, Catherine had lawful access to the marital home as a spouse and resident. Unlike the cases the defendant has cited, they are involving third parties or non-residents. Catherine wasn't unlawfully entering someone else's dwelling. She was accessing a room in her home. Furthermore, even if this theory had any merit, counsel made a reasonable strategic decision to avoid such an argument that a husband could use force to physically eject his wife from a room in their shared home, which would have undoubtedly alienated the jury. Turning to the defendant's next argument, he has also failed to demonstrate that counsel's ineffective for not raising the affirmative defense of reasonable use of force in defense of property. In the defendant's reply brief, he notes that the TVs at the center of this dispute were the property of both him and Catherine, but claims that he was in lawful possession of the TVs. And therefore, it was justified in using physical force to prevent his wife from removing the TV or TVs from his possession. This argument fails because both him and Catherine had equal possessory rights to the properties in question. Therefore, the defendant could not claim superior rights that would justify using force to exclude greater than Catherine's was. The defendant claims that the evidence at trial established the personal property in question was lawfully in his possession, based on his testimony that he regularly used the TV that was kept in the master bedroom. However, the evidence also shows the defendant initiated the confrontation by taking the TV from Catherine's bedroom, completely undermining any claim that she was lawfully interfering with his superior possessory rights. The defendant cites People v. Schwartz in support of his assertion that the defense of property is implicated when one person interferes with another's property rights, including the rights of use and enjoyment. However, Schwartz involved interference in defendant's property by a third party, unlike here, where both parties had equal ownership and the right of possession to the properties in question. The defendant has cited no authority establishing that one spouse may justifiably use force to prevent the other from accessing shared marital property. Moreover, his use of force was clearly excessive, namely grabbing Catherine around the neck, pulling her backwards, throwing her, and biting her during their confrontation over a shared household television. Furthermore, even if such a defense had any legal merit, counsel again made a sound strategic decision not to pursue such an argument, arguing that a husband could use force against his wife over a shared television, which he had just taken from her her room, would have portrayed the defendant in a very unflattering light in the eyes of the jury as controlling and unreasonable, and severely damaged his credibility with the jury. Therefore, the people respectfully request that this court affirm the defendant's conviction and sentence. Thank you, your honors. Justice Schiller, any further questions? Not at this time. All right, thank you, counsel. Appellate, you may present your rebuttal. Thank you, your honor. Your honors, I'd like to begin with the contention that the evidence doesn't support Clay's exclusive use of the office. Here again, this case turns solely on the question of whether that front office qualified as a dwelling. And again, under the Illinois Criminal Code provision that defines dwelling, and in relevant part, it defines dwelling as a building or a portion thereof, or other enclosed space that is intended for use as human habitation. Here, Clay used this front room exclusively for his own habitation. And his use of other spaces within a shared residence, again, doesn't implicate whether or not his front office space was, for purposes of this defense, a separate dwelling. And the fact that Clay locked this room is not the only factor that qualified this room as a dwelling. Like the courts in Perez-Salas noted, a lock was just one factor among many. The court looked at the totality of the evidence presented. And here, there were multiple factors that contributed to the conclusion that this was a separate dwelling. It had a lock, but Clay also used this room to sleep in. He used it to enjoy leisure time and to the exclusion of other people. And again, Clay doesn't argue that the lock was the dispositive factor that made it a dwelling, but simply this was one factor among other evidence. Here, too, counsel notes that this might have been a strategic decision for trial counsel to not introduce this defense. But ultimately, Clay was entitled to this defense because the threshold that he needed to meet in order to be entitled to this defense was that slight evidence showed that he reasonably believed he needed to use force in order to defend his property or his dwelling. In this case, there was more than slight evidence that Clay reasonably believed that he needed to use force. And here, the fact that he and Catherine both had equal possessory rights to the property in question, and therefore, he didn't have a defense, is belied by the law here. So, the rights that are implicated in the defense of property, as counsel acknowledged, include use and enjoyment. Catherine testified specifically that she went into his room to take his TV. And this was an attempt to interfere with his use and enjoyment of property that he was lawfully in possession of. And while counsel states that Clay Adams initiated this confrontation by taking the TV, your honors, up until the point where Catherine walked into his room, there was a tacit understanding that he could use this TV during the National Football League season in order to watch the two games on Saturdays or on Sundays that he wanted to watch. And here, the force that Clay used was not excessive. The defense under Illinois law for both property and dwelling allows somebody to use force that is reasonably necessary to prevent or to terminate the other person's interference with their property or unlawful entry into their dwelling. Here, there were multiple physical confrontations and multiple times where Clay's attempts to use words didn't work, and even his attempts to physically intervene didn't work. So, the force used here was not excessive. Ultimately, your honors, the threshold question was whether there was slight evidence that Clay reasonably believed that he needed to use force in this case to defend both his property and his dwelling. That threshold was met, and Clay was therefore entitled to this defense, and counsel was ineffective for failing to argue this defense as well as failing to instruct the jury on this defense. And again, for all the foregoing reasons, I respectfully request that this court reverse and remand Clay's case for a new trial. Any final questions, Justice Schiller? No, thank you. All right, thank you, counsel. We will take this matter under advisement and issue a ruling in due course.